Stuart Thalblum, Esq., Of Counsel
st2@frontiernet.net
Cohen, LaBarbera & Landrigan, LLP
40 Matthews Street
Suite 203
Goshen, NY 10924
845-291-1900
Fax: 845-291-8601

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re

Yitschak Goldstein,

                                        Debtor.
-----------------------------------------------------X

Case No. 13-37651-cgm

Chapter 13

Hearing Date: March 10, 2015

Hearing Time: 10:45 a.m.


## NOTICE OF MOTION FOR ADMINISTRATIVE CLAIM PURSUANT TO

## 11 U.S.C. 503(b)(1)(A)

Please take notice that Debtor's Landlord, KJ Acres LLC, by the undersigned attorneys,

will move this Court on the 10th day of March, 2015, at 10:45 a.m. or as soon thereafter as

counsel can be heard, at the United States Bankruptcy Court, 355 Main Street, Poughkeepsie, NY

12601 for an Order pursuant to 11 U.S.C. §362(d)(l) allowing for Owner's administrative

expense claim in the amount of $15,300 ($1,700 per month) for use and occupancy of the

Premises from June 1, 2014 through February 28, 2015; and (2) for such other relief as the Court

may

deem just and proper.

Dated: Goshen, New York
        March 3, 2015

                                        COHEN, LaBARBERA & LANDRIGAN, LLP

                                        Counsel for Debtor's Landlord KJ Acres LLC


                                        By: /s/ Stuart Thalblum
                                            Stuart Thalblum, Esq.
                                            Of Counsel
                                            st2@frontiernet.net

                                        COHEN, LaBARBERA & LANDRIGAN, LLP
                                        40 Matthews Street
                                        Suite 203
                                        Goshen, NY 10924
                                        845-291-1900
                                        Fax: 845-291-8601

TO:

Warren Greher, Esq.
Greher Law Offices, P.C..
1161 Little Britain Road, Suite B
New Windsor, NY 12553
Attorney for Debtor

Jeffrey L. Sapir, Trustee
399 Knollwood Road, Suite 102
White Plains, NY 10603

UNITED STATES TRUSTEE
74 Chapel Street
Albany, NY 12207

Stuart Thalblum, Esq., Of Counsel
st2@frontiernet.net
Cohen, LaBarbera & Landrigan, LLP
40 Matthews Street
Suite 203
Goshen, NY 10924
845-291-1900
Fax: 845-291-8601

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | Case No. 13-37651-cgm |
| ----------------------------------------------------X | Chapter 13 |
| In re | |
| | Hearing Date: March 10, 2015 |
| Yitschak Goldstein, | |
| | Hearing Time: 10:45 a.m. |
| Debtor. | |
| ----------------------------------------------------X | |

## DECLARATION IN SUPPORT OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. 503(b)(1)(A)

KJ Acres LLC (the "Owner"), by its attorneys Cohen, LaBarbera & Landrigan, LLP, makes the following motion in support of its administrative claim for past-due, post-petition rent and/or fair use and occupancy for the Debtor's residence located at 131 Acres Road, Unit 201, Monroe, NY (the "Premises"), accrued since this Court's Order dated May 21, 2014, granting the Owner relief from the automatic stay, in the amount of $15,300, representing rent and/or use and occupancy from June 1, 2014 through February 28, 2015. The Debtor has continued to embroil his lawful eviction in frivolous litigation in the United States District Court, while failing to pay any amount whatsoever to the Owner, and continuing to occupy the Owner's property, month after month after month.

**JURISDICTION**

1.      On December 6, 2013 (the "Petition Date"), the above-captioned debtor (the

"Debtor") filed his voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

2.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §157 and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B). Venue is proper in this District pursuant to 28 U.S.C. §1408 and 1409.

## BACKGROUND

3.      KJ ACRES LLC ("Owner") has been the owner of the Premises since 2010.

4.      Owner acquired the Premises from its principal, Nuchem Friedman (and Simon Tov Associates, an entity owned and controlled by Abraham Joseph). Mr. Joseph and Simon Tov Associates were subsequently bought out by Owner.

5.      Upon information and belief, Mr. Goldstein has been a tenant in the Premises since approximately 2004. Upon information and belief, prior to 2008, Mr. Goldstein paid his rent to Mr. Joseph, and thereafter to Owner.

6.      In or about 2008, Mr. Goldstein began withholding rent, upon information and belief, based on a belief that Mr. Goldstein was entitled to a conveyance of the Premises based on some arrangement with Mr. Joseph.

### Rabbinical Court and Justice Court Proceedings

7.      As a result, Mr. Goldstein and the Owner submitted to arbitration before the Beis Din Hamishpot, Monsey, NY. On September 18, 2008, the Beis Din had ruled that Mr. Goldstein "has the status of a 'tenant'."

8.      Mr. Goldstein thereafter continued to withhold rent. As a result, on November 5, 2012, the Beis Din ruled that Mr. Friedman was "authorize[d] to sue [Goldstein] in secular

2

court."

9.      On May 27, 2013, the Beis Din ruled that its September 8, 2008 (sic) ruling was still valid.

10.      Thereafter, Goldstein was served with a new 3-day Notice, Notice of Petition and Petition for return date of November 25, 2013.

11.      On November 25, 2013, Mr. Goldstein appeared pro se and requested an adjournment to hire yet another new counsel.  An adjournment was granted until December 4, 2013.  On or about November 27, 2013,  Mr. Goldstein's [third] counsel, David A. Brodsky, Esq., prepared the Supreme Court action Goldstein v. Joseph, et al, Orange County Index No. 9597/2013 (the "Supreme Court Action") and Notice of Pendency and filed same on December 2, 2013.

12.      Mr. Goldstein served and filed a Motion with the Justice Court on December 4, 2013 seeking dismissal, stay or transfer of the Justice Court Summary Proceeding.

13.      On December 4, 2013, Judge Steven I. Milligram of the Town of Monroe Justice Court informed the parties how he intended to rule on the proceedings, and after such discussion, a stipulation was entered into by the parties on the record, in which Goldstein was to pay into escrow with Cohen, LaBarbera & Landrigan, LLP, the sum of $30,000.00 by approximately 4:00 pm on December 6, 2013, an additional $13,000.00 by approximately 4:00 pm on December 6, 2013, and an additional $1,700.00 per month commencing January 1, 2014, to be held pending determination of the Supreme Court action.  Upon default, Judge Milligram indicated he would sign the warrant and judgment.

3

**Bankruptcy Proceedings**

14.    Mr. Goldstein did not make the payment as required.  Instead, at 2:22 pm on December 6, 2013, he filed his Chapter 13 Petition in this court. According to the Mr. Goldstein's own sworn Petition and schedules, the Debtor did not claim any interest in any Real Property on Schedule A, including the Premises.

15.    Between the Petition Date and March 2014, the Debtor failed to make any payments in consideration of his post-petition obligation to Mr. Friedman.

16.    On or about March 2, 2014, the Debtor tendered to Mr. Friedman a check in the amount of $1,700.00, dated "February 1, 2014."  At the hearing in this Court held March 4, 2014, the Debtor tendered to the Owner's counsel, two (2) additional checks dated "January 2, 2014" and "March 1, 2014," respectively, each in the amount of $1,700.00.  Thereafter, counsel delivered these checks to Mr. Friedman with the instruction that Mr. Friedman could deposit them, and that Mr. Friedman would receive monthly $1,700.00 checks for the pendency of the bankruptcy, in addition to distributions on his pre-petition claim (if allowed).

17.    On March 11, 2014, all three (3) checks were dishonored.

18.    On April 9, 2014, the Owners moved for relief from the bankruptcy stay.

19.    On May 19, 2014, this court granted the Owners' motion for relief from the stay. A copy of the Order signed by this court on May 21, 2014 is annexed hereto as **Exhibit 1.** The Order states that "the automatic stay instituted upon filing of the within bankruptcy case is hereby terminated pursuant to 11 U.S.C. §362(d)(1) so that the parties may continue litigating in New York State Supreme Court and in Justice Court in the Town of Monroe."

4

**Return to Justice Court**

20.    On May 28, 2014, the Owners and Mr. Goldstein were again before Judge

Milligram in the Monroe Justice Court.  See transcript, **Exhibit 2**.

21.    Again, Judge Milligram ordered that Goldstein was to pay into escrow with

Cohen, LaBarbera & Landrigan, LLP, the sum of $53,000.00 by approximately 4:00 pm on

Friday, June 6, 2014, to be held in escrow pending resolution of the Supreme Court action.

22.    Judge Milligram specified (page 46 et seq.) that he would not entertain any further

orders to show cause without the escrow of cash to Owners' attorneys' escrow account.

23.    Due to purported scheduling conflicts by Mr. Goldstein (who claimed he was

required to be out of the country from June 14th until June 24th for his son's wedding) and his

counsel, as detailed in his counsel's June 9, 2014 letter to the Justice Court (See June 9, 2014

letter to Justice Court, **Exhibit 3**), the Justice Court adjourned the June 11, 2014 hearing until

July 10, 2014 at 10:00 a.m., by which time, the amount to be deposited into escrow per Judge

Milligram's instructions had increased to $56,400.00.  Mr. Goldstein failed to do so.

**Procedural History in Federal District Court**

24.    On June 20, 2014, during the exact time Mr. Goldstein had represented that he

was going to be out of the country for his son's wedding, Mr. Goldstein filed a pro se Complaint

in Federal Court, assigned Case No. USDC SDNY Case No. 14 CV 4477 (the "Federal Court

Action"), alleging the same claims covered in his Supreme Court action.

25.    In the Federal Court Action, Judge Román has already dismissed the case against

Judge Milligram *sua sponte*, and persuaded Mr. Goldstein to dismiss the case as against the

Attorney General of the State of New York, Cohen LaBarbera & Landrigan LLP, Ronald J.

5

Cohen, Stephen P. LaBarbera, Stuart Thalblum, Thomas C. Landrigan, Abraham Srugo, and

Yossi's Cafe & Restaurant Inc. Although he agreed to do so, Mr. Goldstein has not yet dismissed

Joseph Kunstlinger and Joseph Kunstlinger P.C. Motions to Dismiss Mr. Goldstein's Complaint

in the Federal Court Action were served on Mr. Goldstein on February 8, 2015, and are

returnable before Judge Román on April 17, 2015. A copy of the Affirmation of Service of the

motion is annexed hereto as **Exhibit 4.**

26.     In the instant Chapter 13 case, Mr. Goldstein has not yet confirmed a Chapter 13

Plan, but has filed an objection to the Owner's claim for pre-petition rent in the amount of

$43,873.86, currently returnable March 10, 2015. The Owner has filed papers and exhibits in

support of its claim.

**Debtor's Alleged Claim to be a "Contract Vendee"**

27.     The purported contract dated December 29, 2008 states in Paragraph 1 thereof that

the purchase price is payable "upon approval of a no-action letter by the New York State

Department of Law, by check subject to collection: $17,200.00."

28.     Said no-action letter was issued March 31, 2009, a copy of which is annexed

hereto as **Exhibit 5.** Debtor has produced no evidence whatsoever that the required

downpayment was ever made.

29.     The purported contract also states in Paragraph 7 thereof that "Closing will take

place at the office of SELLER ATTORNEY at 10:00 AM o'clock on or about 75 days from the

date of this contract."

30.     The purported contract states in Paragraph 3 thereof that "All money payable

under this contract unless otherwise specified, shall be either a. Cash, but not over one thousand

6

($1,000.00) Dollars (or ) b.  Good certified check of PURCHASER, or official check of any

bank..."

      31.     Mr. Goldstein has not produced any evidence of any such payment.  The

purported contract states in Paragraph 4(e) thereof that the sale is subject to "mortgage financing

for Purchaser in the amount of 80% of the Purchase Price at prevailing interest rates."  Needless

to say, there is no evidence Mr. Goldstein ever obtained any such financing.

      32.     Finally, the purported contract states in Paragraph 20 thereof that "If SELLER is

unable to transfer title to PURCHASER in accordance with this contract, SELLER'S sole liability

shall be to refund all money paid on account of this contract... Upon such refund and payment

this contract shall be considered canceled, and neither SELLER nor PURCHASER shall have

any further rights against the other."

      33.     At best Mr. Goldstein's claim is many years late and thousands of dollars short. As

Mr. Goldstein failed to perform ANY of his conditions, he himself breached the contract, and the

purported sellers have no liability.  The Owner is the owner of the Premises, and Mr. Goldstein is

a squatter who has been living at the Premises rent-free for a full year after relief from the stay

was granted to evict him.

## RELIEF REQUESTED

      34.     Owner respectfully requests that this Court allow Owner's administrative expense

claim in the amount of $15,300 ($1,700 per month) for use and occupancy of the Premises from

June 1, 2014 through February 28, 2015, pursuant to section 503(b)(1)(A) of the Bankruptcy

Code.

## BASIS FOR RELIEF

35.    11 U.S.C. 503(b) provides that "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including— (1) (A) the actual, necessary costs and expenses of preserving the estate..."

36.    It is respectfully submitted that providing shelter for the Debtor as he attempts to reorganize is a necessary cost of the estate.  Additionally, it is thoroughly inequitable that Mr. Goldstein continue to benefit from living in the Owner's property without any payment for the use and occupancy thereof, even after this court granted relief from the automatic stay.

37.    *In re Babbs*, 265 B.R. 35 (Brtcy., S.D.N.Y. 2001), the debtor "filed a voluntary petition for relief under Chapter 13... Confirmation took place... [which is not the case herein]. The case was then voluntarily converted to one under Chapter 7 on June 3, 1997. On November 9, 1997, the case was closed and a full discharge granted.  Babbs was in arrears with St. Phillips, her landlord, at the time of the original Chapter 13 filing. When Babbs failed to meet her post-confirmation rental obligations, St. Phillips made a motion to lift the automatic stay, which was granted by this Court on May 22, 1997. St. Phillips then filed a Notice of Presentment for June 6, 1997 for an order granting the automatic stay relief as directed by the Court. Three days prior to the Presentment Date, Babbs converted the case to Chapter 7. It is undisputed that Babbs incurred post-Chapter 13 petition, pre-conversion rental arrears of $11,135.00."

38.    In *Babbs*, Judge Blackshear held that the **"residential lessor's claim for debtor's postpetition, pre-conversion** [to Chapter 7] **rental arrears was entitled to administrative expense priority."**  Judge Blackshear further ruled that "Courts have discretion when deciding which debts to allow as administrative expenses. Bankr.Code, 11 U.S.C.A. §503(b)."

8

39.    See also, *In re Patient Education Media, Inc.*, 221 B.R. 97 (Brtcy., S.D.N.Y.

1998), Judge Bernstein held that debtor knowingly and willingly used claimant's property during

prerejection period to preserve and maximize estate assets and, thus, claimant was entitled to an

administrative claim.

40.    The Owner is the owner of the Premises, and Mr. Goldstein is a squatter who has

been living at the Premises rent-free for a full year after relief from the stay was granted to evict

him.  The Owner has yet to receive ANY adequate protection.  It is respectfully submitted that

providing shelter for the Debtor as he attempts to reorganize is a necessary cost of the estate.

Additionally, it is thoroughly inequitable that Mr. Goldstein continue to benefit from living in the

Owner's property without any payment for the use and occupancy thereof, even after this court

granted relief from the automatic stay.  **The Debtor has voluntarily chosen to remain in the**

**Premises without providing any adequate protection to the Owner, while he pursues his**

**patently meritless, frivolous and arguably sanctionable actions in the United States District**

**Court.**

41.    The Owner reserves its right to assert additional administrative claims against the

Debtor for amounts not yet due for as long as the Debtor remains in possession without payment

and to amend, modify and/or supplement this request, as appropriate under the circumstances.

WHEREFORE, the Owner respectfully requests that the Court enter an order (i) allowing

the Owner's administrative expense claim in the amount of $15,300 pursuant to section 503(b) of

the Bankruptcy Code and (ii) granting such other and further relief as may be just and proper

9

under the circumstances.

Dated:           March 3, 2015
                 Goshen, New York

                              By: */s/ Stuart Thalblum*
                              STUART THALBLUM

EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re                                                              Case No. 13-37651-cgm

Yitschak Goldstein,                                                Chapter 13

                                                Debtor.
-------------------------------------------------------X

### ORDER PURSUANT TO 11 U.S.C. §362(d)(1) TERMINATING THE AUTOMATIC STAY

Upon the Motion of KJ ACRES LLC, by their attorneys, Cohen, LaBarbera & Landrigan, LLP, and upon the reading and filing of said Motion, dated April 9, 2014, and there being papers filed in opposition thereto, and the matter having come before this Court for a hearing on May 20, 2014, and after due deliberation, it is, pursuant to 11 U.S.C. §362(d)(1):

ORDERED, that the automatic stay instituted upon filing of the within bankruptcy case is hereby terminated pursuant to 11 U.S.C. §362(d)(1) so that the parties may continue litigating in New York State Supreme Court and in Justice Court in the Town of Monroe.



/s/ Cecelia G. Morris
_____
Hon. Cecelia G. Morris
Chief U.S. Bankruptcy Judge

Dated: May 21, 2014
Poughkeepsie, New York

EXHIBIT 2

JUSTICE COURT TOWN OF MONROE COUNTY
OR ORANGE STATE OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x
KJ ACRES, LLC,

                        Petitioner,

                -againts-

YITZCHOK GOLDSTEIN,

                        Respondent.

- - - - - - - - - - - - - - - - - - - -x


                        May 28, 2014



        BEFORE: HON. STEVEN I. MILLIGRAM



APPEARANCES

        COHEN, LaBARBERA & LANDRIGAN, LLP
                Attorneys for Petitioner
                40 Matthews Street, Suite 203
                Goshen, New York 10924
        BY:  STUART THALBLUM, ESQ., of Counsel


        MICHAEL D. METH, ESQ.
                Attorney for Respondent
                10 Moffatt Lane
                P.O. Box 560
                Chester, New York 10918


                RODNEY C. CONROW
                Court Reporter
                175 Lily Pond Road
                Parksville, New York 12768
                (845) 292-3534

```
1                                                            2

2                    THE COURT:  This is KJ Acres, LLC

3       versus Yitzchok Goldstein.

4                    There is an Order to Show Cause that

5       was submitted to the Court --

6                    MR. THALBLUM:  Your Honor, I would

7       like to state on the record --

8                    THE COURT:  I'll get there.

9                    First and foremost, Mr. Thalblum,

10      were you provided with a copy of the Order to Show Cause

11      and supporting documents with a notification of when it

12      would be submitted to the Court?

13                   MR. THALBLUM:  No.  I have still

14      never seen any papers in support of the application.

15                   On Monday night while I was in

16      Buffalo for a bar mitzvah there was apparently an e-mail

17      sent from mailingtruck@gmail.com, "Mr. Thalblum, please

18      be advised that I will be moving for stay of the Justice

19      Court Town of Monroe at 9:00 A.M. or as soon thereafter

20      as the matter may be heard.  Thank You.  Yitzchok

21      Goldstein."

22                   THE COURT:  What date?

23                   MR. THALBLUM:  What?

24                   THE COURT:  Does it give you a date

25      or does it just say 9:00 A.M.?
```

3

1

2          MR. THALBLUM:  No, it just says 9:00

3     A.M.

4          MR. METH:  No, it doesn't.  It say

5     May 26th at 11:31 A.M.

6          THE COURT:  Wait Mr. Meth.

7          MR. METH:  I'm sorry.  I apologize.

8          MR. THALBLUM:  That was 11:32 A.M.

9     May 26th.

10         I got a fax of a letter from

11    Mr. Meth's office on May 27th sent at approximately

12    17:06 P.M. 17:06 I guess is 5:00 P.M.

13         THE COURT:  5:06 P.M.

14         MR. THALBLUM:  5:06 P.M. yesterday

15    while I was in route from appearances in Brooklyn,

16    Staten Island and the Town of Waywayanda for grievance

17    day "that in response to our order for temporary relief

18    the Court has ordered all parties to appear tomorrow at

19    6:30 P.M. at the Town of Monroe Justice Court."  There

20    was no application attached to it.

21         I also got a message from the Court

22    personnel that I returned this morning and she said only

23    attorneys were expected at tonight's appearance, so here

24    I am without Mr. Friedman.

25         THE COURT:  And I appreciate your

4

1

2    coming.

3                    First and foremost, I have not

4    signed any Order to Show Cause at this point.

5                    MR. THALBLUM:  As of this moment I

6    don't know what relief Mr. Meth is seeking.

7                    THE COURT:  Actually with respect to

8    Mr. Meth, the application was submiitted pro se then

9    there is a second document indicating that he retained

10   or was going to retain Mr. Meth.

11                   The papers were not submitted by

12   Mr. Meth, is that correct?

13                   MR. METH:  I submitted them to the

14   Court, Judge.

15                   THE COURT:  I'm sorry.

16                   MR. METH:  I submitted them to the

17   Court yesterday morning just in the interest of time

18   because --

19                   THE COURT:  Let me rephrase my

20   comment.

21                   MR. METH:  Fair enough.

22                   THE COURT:  The papers were done by

23   your client pro se even though you may have delivered

24   them to the Court, correct?

25                   MR. METH:  That's correct.

5

1

2      I was retained again by

3   Mr. Goldstein over the holiday weekend.  I worked with

4   him as best I could over the holiday weekend and we

5   wanted to get it to the Court as soon as it opened on

6   Tuesday after the holiday.

7                    MR. THALBLUM:  Now, since --

8                    THE COURT:  Wait.

9                    MR. THALBLUM:  You're in charge,

10  Your Honor.

11                   THE COURT:  Since Mr. Thalblum has

12  not been provided with any of the motion papers I'm not

13  signing the Order to Show Cause.

14                   MR. METH:  All right.

15                   THE COURT:  I have read the papers.

16                   I was here when after lengthy

17  discussions a settlement was placed on the record at

18  which time Mr. Thalblum's client as well as your client

19  both expressed an understanding, and knowledge and an

20  agreement to the terms and conditions of the this

21  settlement.  That's reflected in the transcript that's

22  annexed.

23                   MR. METH:  I have another copy for

24  Mr. Thalblum before we move on.

25                   THE COURT:  Understood.

6

1

2          Mr. Thalblum, just so you're aware,

3    and again I'm not going to quote verbatim from the

4    papers nor am I indicating anything as to their

5    authenticity, first and foremost, there are text that I

6    find to be at the very least inappropriate.  But more

7    importantly, there is an allegation of a fraud against

8    your client that supposedly a contract for the sale of

9    the premises as a condominium was recently discovered.

10          MR. THALBLUM:  Those were also

11   contained in Mr. Goldstein's last set of papers before

12   Chief Judge Morris, and I was offended by the references

13   to me that were contained in those, if I may say so.

14          THE COURT:  Again, I do not

15   intend -- Mr. Meth, I'm not suggesting anything.  I

16   would say the same if those type of allegations were

17   made against you.  I have no reason to suspect other

18   than advocacy on the part of yourself, or Mr. Thalblum

19   both in this matter or any other matter you appeared in

20   front of me on.

21          When somebody accuses a lawyer of a

22   fraud I take that very seriously.

23          MR. METH:  Understood.

24          THE COURT:  And I can appreciate

25   that a pro se litigant may not necessarily appreciate

7

the difference of when you're speaking and representing

on behalf of what your client has told you and provided

you by way of information versus an active

participation.

I understand a pro se litigant may

have an inability to draw the distinction, but I find

those types of allegations to be very disconcerting.

I'm also extremely perturbed that

after a settlement was placed on the record in this

Court which in effect the only thing required of it was

payment in escrow -- at least at that time payment in

escrow to Mr. Thalblum of an agreed upon amount while an

action proceeded in Supreme Court to its resolution.

That payment was not made, and

within a day or so there was a filing in Bankruptcy

Court.

MR. THALBLUM:  Same day.

THE COURT:  Same day.  Excuse me.

I'm not privy nor have I been

provided with any proof that was submitted to the

Bankruptcy Court other than obviously a copy of the

order taking this order out of bankruptcy.

Here's where we stand.  I'm not

telling you you can't submit your Order to Show Cause,

8

Mr. Meth.

I do not believe in depriving Mr. Thalblum the right to bring a motion. I'm not telling him I'm going to sign it, I'm not telling him I'm going to grant it, but there is a way to do it.

I assume that the motion papers that have been provided to me would be the same you provided to Mr. Thalblum, correct?

MR. METH: Yes, Your Honor.

THE COURT: As of this moment there is no stay, there is no Order to Show Cause signed.

I'm not going to grant anything by way of Order to Show Cause until Mr. Thalblum has an opportunity to see the papers and without preparing a full opposition, because it's going to take you some time I suspect to at least indicate to me that there is a -- I'm trying to get the right word and I apologize.

I would like a brief summary. If we were here now and you had a copy of the papers, and you were both discussing what's on the Order to Show Cause you would give me a summary of argument, you would give me a summary of argument as I understand the way the procedure should work in this type of circumstance.

MR. THALBLUM: Again, Your Honor, I

9

1

2   still really don't have much of an idea what --

3                    THE COURT:  I'm not suggesting there

4   is proper service.  Those are the same papers provided

5   to the Court?

6                    MR. METH:  It's an exact copy.

7                    Under the CPLR, Judge, I don't

8   believe I have to give him a full copy of the papers.  I

9   just have to give him notice that temporary relief is

10  being sought.  It's only after the Order to Show Cause

11  is signed that service is required when we are seeking

12  temporary relief.

13                    Nevertheless, I half expected that

14  because of the holiday and the time difference.  That's

15  an exact copy with the exhibits of all of the exact

16  submission including the notice that was given.

17                    THE COURT:  As I understand the

18  proceeding that are before me the way things were

19  left -- I know you weren't here, Mr. Meth; I know you

20  have seen the transcript -- Mr. Thalblum, you were here.

21                    MR. THALBLUM:  I was here.

22                    THE COURT:  Please correct me if I

23  misunderstand or misstate.

24                    MR. THALBLUM:  I happen to have the

25  transcript right here.

10

1

2          THE COURT:  That the agreement that

3    was reached on the record was that there would be

4    $43,000, approximately, sent by appropriate funds to

5    Mr. Thalblum's firm within two days of the proceedings

6    before me, to be held in escrow pending the

7    determination of the issues between the parties in

8    Supreme Court.  That was part one, correct, Mr.

9    Thalblum?

10          MR. THALBLUM:  That's correct.

11          THE COURT:  Mr. Meth, is that what

12    you understood the settlement before me to require?

13          MR. METH:  Yes, Your Honor.

14          MR. THALBLUM:  It was by 4 o'clock

15    on Friday, December 4th.

16          THE COURT:  And I apologize; I read

17    this about an hour ago, may be two.

18          Was there something about additional

19    payment of rent that was required?

20          MR. THALBLUM:  Yes.  There was also

21    supposed to be paid into escrow 1700 per month pending

22    the hearing and determination in the Supreme Court

23    action.

24          THE COURT:  In the event that the

25    43,000 was not submitted to be held in escrow, or the

11

rent payments were not held a judgment and warrant of

eviction would be issued would be issued by this Court

without further proceeding because this case has a very

lengthy history before me.

MR. THALBLUM:  That's correct, Your

Honor.

THE COURT:  By the filing of the

bankruptcy clearly it was technically --

MR. THALBLUM:  Stayed.

THE COURT:  Well, all proceedings

were stayed, and while it may technically be considered

a default it can't be a default acted upon because of

the bankruptcy stay.

MR. THALBLUM:  Until now.

MR. METH:  I think there is still a

14 day bankruptcy stay in effect.

THE COURT:  There is an order that

was faxed to the Court from the bankruptcy Judge lifting

the stay as to these proceedings?

MR. THALBLUM:  My apologies, Your

Honor.  I faxed it to the Court and to Mr. Goldstein's

more recent counsel, Mr. Brodsky, instead of Mr. Meth.

THE COURT:  Have you seen it?

MR. METH:  I haven't seen that

12

order, but I believe I am familiar with what the

discussion is.  But I believe in addition to that once a

bankruptcy is discharged there is a 14 day statutory

stay.  I believe it's under Section 4001 or 4011 of the

Bankruptcy Code, which gives a debtor whose bankruptcy

is being released 14 days where no action can be taken

against him in that span.

          THE COURT:  I'm not a bankruptcy

lawyer.

          MR. METH:  It's discussed on the

transcript of the Bankruptcy Court as it's being

discharged because --

          MR. THALBLUM:  It's not discharged.

The relief from stay was granted.

          According to Chief Judge Morris that

applies for the debtor to appeal the decision of the

bankruptcy Judge to what I would suppose would be the

district Court.

          THE COURT:  Let me short circuit

you.

          Is there a proceeding in State

Supreme Court?

          MR. METH:  No.

          MR. THALBLUM:  Yes.  Yes, there is a

13

1

2      proceeding in State Supreme Court brought by

3      Mr. Goldstein also asserting some sort of fraud and

4      ownership right to the property.  That was filed by

5      Mr. Goldstein I believe about two days prior to this

6      Court's December 4th hearing.

7                      We have also obtained relief from

8      the stay in order to answer and presumably make a motion

9      to dismiss that Supreme Court action based on many of

10     the same principles that have come up in this case and

11     the bankruptcy case.

12                      THE COURT:  And the issue is to

13     acquire title in affect?

14                      MR. THALBLUM:  Well, we are claiming

15     that Mr. Goldstein's action is a cloud on title.

16                      THE COURT:  What Mr. Goldstein's

17     action seeks is to clarify ownership of the property or

18     words to that affect?

19                      MR. METH:  Is that action still

20     open?

21                      MR. THALBLUM:  It was stayed by the

22     bankruptcy.

23                      MR. METH:  The thing that hasn't

24     been said yet on tonight's record --

25                      THE COURT:  Yes, please.

14

I realize I'm being a little more
informal because right now I'm trying to figure out
where we are.

MR. METH:  The entire base of this
whole action, the whole corner stone, every cliche you
can think of, is that there is no contract.

I can't help the timing of the FOIL
answer by the attorney general that's given for a
completely different reason.  We didn't even request the
contract.  The FOIL request to the AG that resulted in
us not only getting the contract but also Mr. Goldstein
is listed as a partner in the LLC ownership of the condo
that's at issue here.  You can't have it both ways.  He
either committed fraud on the AG's office by using a
false contract to file the condo or there is no summary
proceeding jurisdiction in a local court to do a
partition action between the partners of that LLC.

And I understand the way it went
down with the bankruptcy, and I wasn't here, but I read
the last transcript, but the bottom line is, yes, there
has been a contract that's produced that the bankruptcy
Judge knew about when the lien was discharged, this
exact situation.  5015 was brought up --

MR. THALBLUM:  What lien was

15

discharged?

MR. METH:  Excuse me, the stay.  I

apologize.

MR. THALBLUM:  The stay was removed.

MR. METH:  When it was removed the

conversation about, you know, the impact of the contract

upon the action was discussed, and that Judge, while

specifically didn't say you have relief, they did say

that's the sort of action that can be brought back in

local Court.

THE COURT:  Except that there were

proceedings before.

MR. METH:  And your stip wasn't

complied with, I assume is where you're going.

THE COURT:  Right.

MR. METH:  And the only thing I can

say to that, Judge, and I agree, and something that I

discussed with him at length, my only argument that I

can say to that, for what it's worth, at this point that

stip was based on a mistake -- it wasn't a mistake of

fact, it was alleged by my client that a contract

existed and the person who had it in his possession,

Mr. Friedman, didn't tell the Court that it even existed

and he lost it, he just disavowed that it existed

16

1
2    completely.
3                    And I agree with you, I have even
4    spoke to Mr. Goldstein about the tenor of his language.
5    That's the first thing that I picked up on.
6                    The bottom line is, the contract
7    exists now, and it's in writing, it's still open because
8    there has been no action on it; he's listed on the AG's
9    site.
10                    What happened over the holiday
11    weekend without giving notice, I suspect he has notice
12    now,  I can appear in 24 hours again.  We are still
13    requesting relief of the stay.
14                    Why your prior stip wasn't complied
15    with; when he made that stip he was up against the wall.
16    There was no contract, he was at the end of his
17    litigation rope, and this contract now basically --
18    everything he said about it, the terms are accurate.
19    Everything he said about the condo filing, the terms are
20    accurate.
21                    THE COURT:  Except that when this
22    matter came before me, if I recall correctly, there were
23    two determinations by the Beis Din establishing the
24    nature of the relationship as landlord-tenant.
25                    MR. METH:  Because they couldn't

17

produce the contract.  In that proceeding he said there
is a contract.  They couldn't actually see it so they
said based on what they know then -- if Friedman had
just said there was a contract the Beis Din's
arbitration one and two wouldn't have been sustained.

THE COURT:  I'm just randomly trying
to work out some numbers in my head.

We know December to June is 6
months, at 1700 a month is roughly $10,000, if my math
is accurate.

MR. THALBLUM:  A little over

I revised the judgment.  The current
amount should be 52950 plus costs and fees.

If I may say so, this talk about a
contract, it's spurious.  There is no contract.  The
document that was submitted to the attorney general was
contained in the package, the request for the no action
letter converting the property to a condo.  I don't have
a copy of the no action letter, but the property is a
condo, so it's been 6 years since the no action letter
was submitted.  Mr. Goldstein has not paid a penny of
consideration for this supposed purchase.  He has not
paid any down payment, he has not paid any payment to
consummate the contract.

18

MR. METH:  I respectfully disagree
with that position.

MR. THALBLUM:  He cannot hold
himself open as a contract vendee interminably after the
conditions were complied with.  Not to mention also he
has been claiming his ownership interest for some years.

MR. METH:  He has been contract
vendee for a number of years.

THE COURT:  Before we get there --

MR. THALBLUM:  The Beis Din rejected
his argument twice.

THE COURT:  I agree, Mr. Thalblum,
but he --

MR. THALBLUM:  He breached his
stipulation with this Court, he disobeyed the orders of
Judge Morris to make those petition payments, to provide
adequate protection, he disobeyed the Beis Din's orders.

THE COURT:  Let's take it back just
a hair.

I agree with you except there is a
document which at least superficially appears to be a
contract, that appears to be signed by Mr. Goldstein,
that appears to be signed by your client as well and by
another gentleman.  Appears.  So, here's where my issue

19

with what's been raised against your client lies.

I agree with you; he agreed on the record, he admitted he knew the terms and conditions, he spoke with counsel, he was represented by counsel, agreed to the settlement, agreed that his attorney represented him adequately. It's all on the record, so, I agree with you when it goes to there; that there were obligations that were stipulated to in this Court that were not met.

MR. THALBLUM:  This Court and two other forums.

THE COURT:  I can't speak of other courts. I can only tell you about me. If you provide me proof of those I will consider them as well.

However, here's where the ball bounces back. His argument before me, and I don't know what he said in other courts, because none of those are before me right now, is that he always maintained there was a contract, but it was never given to him. He didn't have a copy of it, and that your client in effect secreted it, hid it, take your choice, whatever choice of words we care to label it with. In some manner your client had the contract but did not disclose it.

Now, without deciding the issue, and

20

1

2      I'm not deciding anything tonight, I can't, too many

3      things bouncing around on this; if there is a -- I just

4      ask this more as a rhetorical question, if there was in

5      fact a valid contract that your client couldn't produce,

6      Mr. Meth, that your client, Mr. Thalman, chose not to

7      produce, isn't there a predicate for suggesting to the

8      Beis Din that their determination as to a

9      landlord-tenant relationship is in error?  If there is

10     in fact a contract -- let's say he breached it.  I'll

11     get there in a second.

12                     MR. THALBLUM:  Who breached it?

13                     THE COURT:  Let's say there is a

14     contract between your client and Mr. Goldstein to buy

15     this condominium.  Let's hypothetically say there is

16     such a contract, and it's a valid and binding agreement.

17     If your client had that contract and didn't produce it

18     to the Beis Din or before this Court or any other

19     tribunal I would be very concerned with that.  I'm not

20     suggesting that he did or didn't.  I'm not giving any

21     credence to any arguments.  I'm just raising, again,

22     more a rhetorical point more than anything else.  If in

23     fact your client knew there was a contract, was a party

24     to the contract and had a copy of the contract and

25     misrepresented to the Beis Din, to this Court or other

21

Courts there is no such contract, it would seem to me that at the very least the predicate for the determination by the Beis Din of a landlord-tenant relationship would be faulty and it would go from there. So, that's what I'm wrestling with.

MR. THALBLUM:   There is two problems with that.

I would say that it's incumbent upon the person that's propounding that there is a contract to produce it.

THE COURT:   Right.

MR. THALBLUM:   Secondly, before the Beis Din, and this is contained in the Beis Din's decisions, as translated and which have previously been provided to the Court and to Mr. Goldstein's counsel, whether Mr. Meth or one of his predecessors or successors --

THE COURT:   That there is no contract.

MR. THALBLUM:   No.   That if Mr. Goldstein has an issue with Mr. Joseph as the seller who breached the agreement to sell the unit to Mr. Goldstein then his recourse is with Mr. Joseph.

THE COURT:   Actually, the contract

22

that's Exhibit B --

        MR. THALBLUM:  Right, I see is

between Mr. Friedman and Simon Tov Associates, which is

the entity --

        MR. METH:  Partnership that owns

the condo.

        MR. THALBLUM:  Controlled by

Mr. Joseph.

        But the Beis Din did address that

issue that Mr. Goldstein should take his claim for

damages against Mr. Joseph.

        THE COURT:  Except that in this

agreement Mr. Friedman and Simon Tov are both identified

as seller.

        MR. THALBLUM:  I understand from the

documents that Mr. Goldstein obtained from the attorney

general's office that this was submitted as part of the

request for no action letter.

        THE COURT:  I don't know what was

submitted or why it was submitted.  I haven't even seen

that.

        I have a real issues with

Mr. Goldstein not complying with the stipulation put on

the record in this Court.

23

MR. THALBLUM:  So do I.

THE COURT:  As well you should.

Because it was my notes, my recollection and my understanding, Mr. Meth, that the purpose for having the money held in escrow --

MR. THALBLUM:  Was to determine these issues in the context of the Supreme Court action.

THE COURT:  Correct.

MR. THALBLUM:  That Mr. Goldstein himself commenced.

THE COURT:  Correct.

And that's where my issue with your client lies.  Because within a day or whatever it was, of the agreement in this Court, as he has the right to do, he filed a proceeding in bankruptcy court which stayed everything.  The stay is now lifted as far as I can determine.

MR. THALBLUM:  Correct.

THE COURT:  The payment had to be made by 4 o'clock on Friday afternoon, right?  The bankruptcy filing was made before the payment was due.

MR. THALBLUM:  The bankruptcy filing was made about 2:30 on Friday afternoon.

THE COURT:  Before the payment was

24

1

2      due.

3                    MR. THALBLUM:  Mr. Goldstein had

4      already taken his pre-petition counseling course at the

5      time that he entered into the stipulation.

6                    THE COURT:  But I think you know

7      where I'm going.

8                    MR. THALBLUM:  I'm not sure.

9                    MR. METH:  I know exactly where

10     you're going.  Can I put it in an envelope and write it

11     and see if I'm right?

12                    THE COURT:  Here's the real

13     interesting question.  And I don't have an answer for

14     you.  I raise it as a question.

15                    If he technically could not default

16     because the bankruptcy stay was in effect, and he were

17     to hand you a check today for $53,000 to be held in

18     escrow would he remedy his default?

19                    MR. THALBLUM:  The bankruptcy stay

20     affects any creditor attempting to enforce or make any

21     collection from a debtor.

22                    THE COURT:  There would also be a

23     preference. He couldn't make the payment to you.

24                    In theory if Mr. Goldstein were to

25     take -- I'm not saying he has it -- it's 7:10 on

```
 1                                                    25
 2   Wednesday.
 3                   MR. THALBLUM:  Again.
 4                   THE COURT:  Again.  I apologize.  I
 5   don't mean to laugh.  We are back again.
 6                   MR. METH:  At this time we are back
 7   with a contract in hand.
 8                   THE COURT:  Here's what I'm
 9   thinking.
10                   MR. THALBLUM:  If he wants to pay
11   $53,000 into escrow in my firm by this Friday at 4:00
12   P.M.
13                   MR. METH:  I think that stip, Judge,
14   is Void Ab Initio.  It's based on fraud.
15                   When something is based on fraud
16   it's void as if it never happened.  Do you know what I'm
17   talking about?  Void Ab Initio.
18                   THE COURT:  Except when you read the
19   transcript Mr. Goldstein initially didn't appear to be
20   inclined to agree with what was being said by way of
21   settlement.  We took a recess, he spoke with counsel,
22   which settlement was then placed on the record,
23   Mr. Goldstein and Mr. Friedman both affirmed their
24   testimony and for whatever reason -- people agree to
25   settlements of matters, not necessarily because they
```